United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and times will be allotted to counsel. The first case today is United States v. Anthony Farmer, appeal number 191603. Good morning. May it please the court, Jessica LeClair for Anthony Farmer. I want to begin by discussing why the sentence was substantively unreasonable and then turn to why the plea was involuntary. The need to avoid unwarranted disparities in federal sentencing must include the need to avoid unwarranted racial disparities. It may be the most important factor to consider when evaluating 3553A6. And this case presents an opportunity for this court to explicitly recognize that structural racism and implicit bias are real and they're important factors when a district court is imposing sentence. I want to highlight for the court specific examples of how this incident was treated differently when we were speaking, when the court was looking at the incident for the white defendant versus the black defendant. And if I could, I'd like to compare the prosecutor's sentencing memorandum and read two paragraphs describing the exact same incident. These are from, I'll begin with the first paragraph. Quote, the defendant engaged in an egregious offense involving the violent robbery of an ATF CW. The fact that he and his co-defendants did not know at the time of the offense that the CW worked for an ATF does not mitigate the seriousness of a robbery committed at gunpoint. All involved are extraordinarily lucky that the victim suffered no more serious physical harm given the extreme risk posed when firearms are involved. End quote. Now this is the same incident, quote, in a different defendant's sentencing memorandum. Quote, here the defendant was involved in an armed robbery of an unarmed government CW. This offense is inherently dangerous and all involved are lucky that the CW was not seriously hurt. End quote. Counsel, excuse me. Counsel, when the court imposed its sentence, it was careful to distinguish between the nature of the prior record of Mr. Farmer and the nature of the record of the co-defendants. Why do you assume that these memoranda that you describe necessarily informed how the judge approached the sentence? Because again, he focused on what he thought was a particularly violent criminal history of your client and distinguished that criminal history from that of the co-defendants. Why isn't that a perfectly appropriate distinction to make? And as I recognized in my brief, there is a difference in their criminal history, but what the judge mentions repeatedly is the violent nature of this offense. And the violent nature of the offense is the same. The offense is the same, the course of conduct, and it's actually Mr. Sparrow who brandishes the weapon. So while there may be some basis to distinguish between them based on the prior record, it doesn't, it doesn't, it's not reflect, eight years is too much of a difference here. The government says that in this case, your client also brandished the weapon as well. In fact, the government characterizes that as an undisputed fact. In this case, they both brandished weapons. Isn't that, isn't that correct? So it's, if, if the, during the plea colloquy, Mr. Farmer actually says, I, he disputes that he brandished a firearm as in, in the manner of using it as a pistol whip. He admits that he was negotiating this firearm sale. He says, I didn't brandish that weapon. And the judge credits that. So he actually denies it and she credits it. And I'll also point out that during the sentencing hearing, the court actually remembers that incident as being more violent than it's actually alleged to be. So during the sentencing hearing, she does rely on that incident and she says, your client, she's actually talking about the distinction between Mr. Sparrow and Mr. Farmer. And she says, Mr. Farmer threatened somebody with a, she threatened to pistol whip somebody who is in the fetal position. But if you look back at the PSR and the plea colloquy, that's not the allegation. The allegation is there was, she conflates two different incidents and actually remembers it as being more violent than it was because he's alleged to have... Unfortunately, defense counsel did not bring that directly to the attention of the court. He asked for parody, but he does not make these fine points about the differences in how the two are treated. But we also, what, what, what the judge is aware of, but fails to account for is that even if that were true, although again, Mr. Farmer denied it and the judge credited that, even if that's the case, it's Mr. Sparrow who is also at that same time brandishing the firearm. So to, to, so if you compare these, the sentencing memorandum describing the incident to the judge and the judge's recollection of the incident in Mr. Farmer's case, it has a much more violent appearance, even though it's the exact same incident that Mr. Sparrow was involved in. Was the PSR created, were both PSRs written by the same probation officer? I believe that's true. I can't, I, I remember that the probation officer mentions making a mistake and because she was doing them all at the same time. So I didn't see the PSR of Mr. Sparrow, but it's my understanding that it was written by the same person. How are you able to have a quote from the PSR if you haven't seen it? I'm sorry? How are you able to have a quote if you have not seen it? I thought you started off by quoting what one said versus the other. I was quoting the prosecutor's sentencing memorandum. Okay. So, so yeah, so that's the prosecutor painting the picture of this event very differently when she's reflecting the, the white defendant versus the black defendant, even though it's the same. In terms of this event, I mean, the, again, the government portrays this as undisputed that your client physically, not with a gun, but physically attacked the confidential informant, knocked him to the ground, continued to pummel him. And the incident only ended when Mr. Perez's mother happened to come in hearing a commotion and they then left. But in terms of the violence of the incident, it seems that your client was very much involved in violence until the very end. Isn't that a fair account of what happened here? Yes, Mr. Farmer acknowledged that he did commit an act of violence and he manually assaulted this individual and the plea agreement, and he was looking at a very serious sentence, even under the guidelines. So we're not suggesting that this is not a violent incident, but the point is that when you make a comparison between how these two were treated, that disparity doesn't seem fair. I guess what Judge Lopez is suggesting is that he has more culpability because he's the one who did the actual pummeling. Well, and I would suggest that our criminal law does not reflect that. I mean, a simple assault is a manual assault, and an assault with a dangerous weapon is generally considered a more serious offense, and that's reflected under Section 111A and B. So it's Mr. Sparrow who actually engages in the act that is the most dangerous. But I would also call attention to another difference here about the prosecutor conveys that Mr. Farmer had a leadership role in this offense. She tries to suggest that he had a leadership role. She suggests that in the sentencing memorandum, even though she doesn't seek an enhancement under the PSR, the judge agrees and says, yes, it looks like he had a leadership role. She harnesses that in her sentencing discussion, and yet I would suggest, I would ask the court to engage in the simple exercise of imagining my client is white. If we engage in this exercise and we look at Mr. Sparrow or Mr. Perez as the 6'3 tall black man, suddenly I would suggest that the pure speculation of that inference is revealed. You can't really draw the inference that any one of these individuals had a leadership role. Five minutes remaining. I'm sorry, the court pointed to the fact that he had 700, whereas the other two only had four, suggesting that that supported a leadership finding. That's true, and I'm suggesting that if any, you can take any fact, extricate any fact from this, and draw an inference that there was a leadership role. What inference would you care for us to draw from the fact that there was a difference in the distribution? What other inference should we draw? First of all, I don't believe that we know how much money they had in total. We only know how much money of the marked money. There's any number of reasons why he may have had more money, but you could latch on to the fact that Mr. Perez is the one who arranges this transaction. If you notice, he sits back, he doesn't get his hands dirty, and at the end of the situation, at the end of this phony firearm sale, he actually tells the other two what to do, and they do it. He says, tell him why this is happening, and they obey his command. We can look at the fact, we can look at that fact, and draw an inference that Mr. Perez has a leadership role. We can look at the fact that Mr. Sparrow, at the end of the transaction, he stands up and he puts on gloves and reaches out and takes the firearm, and from that, we could infer that he has a leadership role. My point is, it's pure speculation. If we actually take this and imagine any one of them as the black man, I submit that because of the impact of implicit bias, that it's much easier to draw an inference that one of the other people would be the leader. If we imagine that individual as the taller, heavier black man. So, I would ask the court to draw no inference that there's a leadership role here. Counsel, can I ask you quickly about your claim that your client should be able to withdraw his plea to the brandishing charge, the crime of violence charge. Your claim seems to be that there was an error by the court in explaining the law that applies to that charge. The government makes the point that your client, in the government's view, clearly pled to the elements portion, not the residual clause. And so, to the extent that you did not have the benefit of Davis, and the court did not explain in Davis terms, the residual clause, it just doesn't matter. Because, again, the plea was to the elements portion, not the residual clause. That seems quite correct to me.  So, the question is whether or not he had the opportunity to make informed decisions about his defense. So, there's no question that before Davis, the residual clause was a basis for criminal liability. After Davis, and after Rahafe, so the scope of criminal liability is quite large. After Davis, the scope of criminal liability is much narrower. And so, he had the right, under the notice provisions of the due process, Fifth Amendment and the Sixth Amendment, he had a right to make informed decisions about whether his conduct, whether he had a basis, a strong defense on the 924C count. So, without the residual clause, those lesser included offenses are no longer crimes of violence. So, he may have pled guilty knowing that no matter what happened at trial, he's going to be convicted under 924C, because all of those offenses are going to be crimes of violence, whether or not he gets convicted of the lesser included offenses. So, really, my argument is focusing on his decision making. He had a right to strategize with his attorney, evaluate the strength of his case at trial, and then weigh that in relationship to what the government was offering. And that analysis dramatically changed once the scope of liability narrowed.  Any additional questions? All right. Thank you, Counselor. Thank you. Good morning. Seth Aframe for the United States. Good morning. I will just pick up where we left off and deal first with the 924C plea argument and then turn to the sentencing argument. The government's position, I think, as Judge Lopez correctly described, is the defendant did have notice of everything that he needed to know at the time of the plea. The residual clause was in doubt at that time. The defendant was charged with elements clause offenses and says, well, maybe if I knew the residual clause was gone, I could have argued that I'm only guilty of lesser offenses that maybe don't meet the elements clause. So, the defendant could have knew that he could have, one, argued the residual clause was invalid. The legal predicate for that argument existed. And then said, I'm going to go to trial and try to prove that I'm guilty of the lesser included offenses. That option was available to him. The legal tools were all there to do that. That's a gauntlet that would have been difficult to run. But that would have been a choice. The other choice is, I will plead and I will try to negotiate a better deal with the government. And the deal that he got was the government recommending low-end guidelines sentence. Those are hard choices. I'm not here to say those are easy choices. But those are fair choices. And those are the choices he had to make at that time. There was no legal error. So, to the extent he says, I wish I had known more. I guess every defendant wishes they could have known more. But that would basically freeze our legal system. And he knew everything. And he made choices. And those choices were legitimate. There's been no point, you know, the plain error standard. Question one is, was there an error? And two, it was clear and obvious. I don't think this meets either of those. Because there was no error at all. As to Rahave's argument, that's different, right? There was an error. And I would acknowledge it's a clear and obvious error. But the problem there is there's been nothing to following the way this court treats these issues in Burghardt. There's nothing there that suggests a real harm to the defendant. His only argument as to why he would have gone forward now is to say, well, if I decided to go forward on the 924C charge, I would have just gone forward on this too. Putting everything else aside, the first fundamental problem is he shouldn't be allowed to go forward on the 924C charge because he would legally plead guilty to that with no error committed by the court. In addition, he really hasn't demonstrated any claim, plausible claim of actual innocence to it, and basically just says, well, why not? And there are good reasons for why not. Counsel, although we didn't get into an oral argument, Appellant urges us to follow the Fourth Circuit and take the position that in this Rahave situation, what we have really is structural error, which necessarily satisfies the prejudicial part of the plain error analysis. And on that basis, the indictment should be vacated. Is that argument still available in light of our Burghardt decision, or do you think we've, in effect, ruled out consideration of that approach? So Burghardt certainly does not. So let me just distinguish, first of all, issues here. So the Fourth Circuit case, Gary, is about an error at the plea colloquy stage. And that's the structural error they say. They don't talk about a structural error in the indictment. So point one is, in the defendant's brief, the structural error argument, to the extent there's one made, is about the indictment, not the plea colloquy. So let me make that point. Burghardt also doesn't follow that approach. I mean, there's no question it doesn't follow that approach. I was the lawyer on Burghardt. Judge Kayada was the judge on that case. And it is fair to say the structural error argument wasn't made in that case, as far as the plea colloquy goes. So to the extent that we don't follow that approach, you know, I think sometimes this court says, well, new arguments that haven't been raised can be raised. It wasn't raised here. And I will say that since Gary, by the Fourth Circuit, the Eighth Circuit, Tenth Circuit, and Fifth Circuit, have taken the issue on directly and rejected it. So under a plain error analysis, we haven't damaged the structural error argument. It's certainly not plain, as the law states today. We have three circuits saying no. We have one circuit saying yes. And then we have other circuits, like ours, who follow an approach that's more consistent with the ones that say no, as opposed to the Fourth Circuit that says yes. So the way the case is before you right now, this is not the case to take that issue up directly on the merits, given the plain error posture and the status of the law in the other circuits. Well, if we disagree, how would you defend it on the merits? The way to say that it is not a structural error, that the Supreme Court has never said that the failure to instruct on an element is a structural error. The kind of structural errors that exist are narrow. And this is one that can be measured as to what prejudice did it cause. We can look at both actual innocence and reasons why someone would have gone to trial. I mean, in the Burghardt case, the question was posited, what evidence can you show us on appeal that says that this failure to tell you about this element would have made any difference? That's a workable standard run, operated by this circuit, operated by several other circuits. And it doesn't. And so it's not the kind of error where the prejudice can't be evaluated. And I don't think the Fourth Circuit's explanation about why that isn't right is correct, which is why since then, three circuits have already said no to that argument on the ground that prejudice can be evaluated in this context. In fact, our standard is that it might have made a difference, not that he doesn't have to prove it would have made a difference. That's true. It's a reasonable probability that it might have made a difference. And I think here, like in Burghardt, there's no question this person served multiple years in jail very recently for a armed robbery offense in New Hampshire. And that's a similar situation to what we talked about in Burghardt. And there is no plausible real argument as to why a trial would have made a difference. And it wouldn't have helped him when it comes to sentencing either, as I explained in the brief, because the drug count was in any event the driver of the non-924C sentence. So I can turn to the sentencing issue. The argument is that this was racially motivated and motivated by implicit bias. So let me start by saying this was a violent offense committed by multiple people. Some of them were white. Some of them were black. I listened to my friend read the sentencing memorandum. I guess I didn't hear a huge difference in the description of the crime. It was violent all around. Mr. Sparrow got a long sentence, not as long as Mr. Farmer. So the question really is, well, why is that? Are there reasons that are legitimate that Mr. Farmer might have gotten a longer sentence than Mr. Sparrow? So looking at the crime itself first, I think there are differences. One, as Judge Lopez correctly pointed out, Mr. Farmer was the one who engaged in the actual physical violence of beating up the victim. In addition, I think that so they both brandished a gun. So, I mean, there was some five minutes remaining. It was some discussion about what was admitted to at the change of plea. The pre-sentence report, which is where my brief takes the facts, was unobjected to at the sentencing. And it says Mr. Farmer displayed the gun in a motion to pistol whip the victim. He did not do that. And he pled guilty to brandishing in the 924C charge. And then is the leadership, it's not a guideline finding, but is there a plausible basis to say Mr. Farmer had more of a leadership role? Yes. That he had more money, it is a fact that is consistent with being more in charge because you get more. Are there other explanations? Yes. There are always other explanations. Judges are always presented with facts that lawyers argue point in different directions, and then they have to make conclusions. But really, the core of what the district court was concerned about was this defendant's prior record of violence. He had a juvenile offense for a crime involving a gun. He then, as an adult, commits an armed robbery in which an individual participates in an armed robbery in which someone is shot, gets a three to six sentence in state prison, comes out of that sentence, and then commits this violent crime while on probation or parole from the New Hampshire state sentence for the armed robbery. So the district court is presented with a defendant who is presenting an escalating pattern of violence. And the district court specifically says my primary duty as a sentencing judge is public protection. And given this record, public protection is paramount. And the court says I think a longer sentence than the government's asking for is required for the court to meet its 3553A obligations. The other defendants, while they're both criminal history three, it's a series of driving and disorderly offenses with no violence. The district court makes that point. That's not race. That's differences in records that tie very closely to the 3553A factors. And that's what the district court relied on. That's appropriate, and that makes the sentence substantively reasonable. There are no other questions. I'll rest in my brief. Thank you. Thank you. Thank you. That concludes the arguments in this case, as there's no rebuttal. Attorney LeClaire and Attorney Aframe, you should disconnect from the hearing at this time.